<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PIERINO PERCIBALLI and BRIGIDA R. PERCIBALLI, h/w<br><br>Plaintiffs,<br><br>v.<br><br>MOUNTAIN CREEK RESORT INC.; MOUNTAIN CREEK MANAGEMENT, LLC; GREAT GORGE; SNOW CREEK, LLC D/B/A MOUNTAIN CREEK RESORT, INC., SNOW OPERATING, LLC; SNOW PARTNERS, LLC; JOHN DOE SKI RESORT OPERATORS (1-5); JOHN DOE SKI RESORT MAINTENANCE COMPANIES (1-5); JOHN DOE SKI RESORT INSPECTION AND SAFETY COMPANIES (1-5),<br><br>Defendants. | Case No. 2:23-cv-00948 (BRM) (SDA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants' Motion to Preclude (ECF No. 76) Plaintiffs' expert witness, Richard Penniman ("Penniman"), brought by Mountain Creek Resort Inc.; Mountain Creek Management, LLC; Great Gorge; Snow Creek, LLC D/B/A Mountain Creek Resort, Inc., Snow Operating, LLC; Snow Partners, LLC, alongside one to fifteen as-of-yet unidentified defendants who are "entities or persons that maintained, controlled, constructed, inspected, designed, repaired, and/or monitored the Mountain Creek Resort, . . . controlled, monitored, inspected, and/or observed the ski trails and skiing activities at Mountain Creek Resort . . . (and/or) controlled, monitored, inspected, and/or observed the ski trails and skiing activities at Mountain Creek Resort" (collectively, "Mountain Creek") (Compl. (ECF No. 1) ¶¶ 32–34). Mountain Creek

submitted a brief in support of its motion, (Mountain Creek's *Daubert* Br. (ECF No. 76-6)) seeking to preclude Penniman from testifying as an expert and to exclude sections of his report from being offered as evidence (Expert Opinion Report of Penniman (the "Penniman Report") (ECF No. 76-3)). As part of the same brief, Mountain Creek seeks discovery sanctions due to an alleged violation of the Federal Rules of Civil Procedure ("Rule" or "Rules"). (ECF No. 76-6 at 3).

Plaintiffs, Pierino Perciballi ("Mr. Perciballi") and his wife Brigida R. Perciballi ("Mrs. Perciballi") (collectively, "Plaintiffs,") filed a response brief, opposing both preclusion of Penniman and any discovery sanctions. (ECF No. 78.) Mountain Creek timely replied. (ECF No. 80.) Having reviewed and considered the submissions filed in connection with the motion, and having declined to hold oral argument pursuant to Fed. R. Civ. P. 78(b), for the reasons set forth below and for good cause appearing, Mountain Creek's *Daubert* Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

**A.   Factual Background**

This case arises from a skiing accident that occurred at Mountain Creek's ski resort ("the Resort"). (ECF No. 1 ¶¶ 1 & 4; Ans. (ECF No. 12) ¶¶ 1 & 4.) On February 21, 2021, Mr. Perciballi and his sixteen-year-old son Matteo Perciballi chose to ski down the Matchmaker trail (*id.* ¶ 50), an intermediate difficulty terrain park course contained within the Resort (Pls.' Br. Ex. A. (ECF No. 79-4)). The Matchmaker trail is adjacent to the Resort's "learning area." (*Id.*) Mountain Creek uses blue, mesh fencing to separate Matchmaker trail from the learning area. (ECF No. 1 ¶¶ 1–4; Mountain Creeks' Statement of Undisputed Facts (ECF No. 77-12) ¶ 3.) In his descent down Matchmaker trail, Mr. Perciballi collided with this blue fencing, tangling his legs and violently falling to the ground. (ECF No. 1 ¶¶ 67–69.) This collision caused him to sustain significant

injuries, requiring four days of hospitalization and leaving him with an ongoing disability. (ECF No. 1 ¶¶ 76–77 & 83–84.)

It is the blue fencing Mr. Perciballi collided with which is the subject of the parties' factual disputes. According to Plaintiffs, the blue fencing was down for an indeterminate amount of time before Mr. Perciballi's accident due to a negligent pattern of conduct wherein Mountain Creek did not inspect or maintain the condition of the fencing over the course of the day. (ECF No. 1 ¶ 93.) Plaintiffs also argue that the color of the fencing deviates from the industry's safety standards, which they claim require highly visible, brightly colored fencing. (Penniman Report at 4.) Finally, Plaintiffs believe the Resort itself was negligently designed by placing the learning area adjacent to an intermediate slope, requiring the erection of a hazardous obstacle, namely the blue fencing, to prevent skiers from crossing into the other area. (ECF No. 1 ¶ 93.)

Mountain Creek disputes Plaintiffs' characterization. It agrees that it has placed blue fencing between the courses as a necessary safety precaution—as required and immunized by the New Jersey ski statute. (ECF No 77-12 ¶¶ 16–19 (citing N.J. Stat. Ann. 5:13-3(b)(3)).) Mountain Creek maintains that the use of blue fencing is within the standards of North American ski resorts and that its employees are trained to monitor and remove hazards—including downed fencing—from its courses at all times. (ECF No. 79-12 ¶¶ 14–19.)

B.   **Procedural Background**

Plaintiffs filed this case on February 17, 2023, alleging two causes of action: (1) negligent management and design of the Resort resulting in Mr. Perciballi's injuries, and (2) loss of consortium on behalf of his wife Mrs. Perciballi. (ECF No. 1 ¶¶ 86–98). Mountain Creek answered on April 20, 2023, denying all claims but not moving to dismiss. (ECF No. 12.) Fact discovery ended September 11, 2024, (Amended Pretrial Scheduling Order (ECF No. 51)) and expert

discovery concluded March 12, 2025 (Letter from Edward J. Turro Esq. (ECF No. 63)). The parties submitted their dispute to mediation but were unable to resolve their different positions on liability and damages. (ECF No. 69.) Thereafter, Mountain Creek moved to preclude the testimony and expert report of Richard Penniman (ECF No. 76), and further moved the Court for summary judgment on all claims (ECF No. 77). Plaintiffs filed responses, arguing Penniman's testimony and report were admissible (ECF No. 78), and that summary judgment was not warranted (ECF No. 79). Mountain Creek filed a reply brief in support of precluding Penniman (ECF No. 80), and in favor of summary judgment (ECF No. 81).

## II. LEGAL STANDARD

Generally, relevant evidence is admissible at trial. Fed. R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The court, however, may preclude relevant evidence from trial where its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The Federal Rules of Evidence embody a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact.'" *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (quoting *DeLuca v. Merrell Dow Pharmaceuticals, Inc.,* 911 F.2d 941 (3d Cir.1990)).

Federal Rule of Evidence ("FRE") 702 governs the admissibility of expert testimony, and carries forward the "liberal policy of admissibility," for evidence. *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 806–07 (3d Cir. 1997). These rules require "district courts perform a gatekeeping function to ensure that expert testimony meets the requirements of FRE 702. That

function extends not only to scientific testimony, but also to other forms of 'technical' or 'specialized' knowledge." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017). However, "the test of admissibility is not whether a particular scientific opinion has the best foundation . . . [r]ather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'" *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (quoting *Kannankeril*, 128 F.3d at 806). The Third Circuit provides the court with the following factors to determine whether an opinion is sufficiently reliable to be admitted:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994)) (the "*Daubert* factors"). These factors "are neither exhaustive nor applicable in every case." *Kannankeril*, 128 F.3d at 806. Instead, they are flexible starting point for the court to address the ultimate questions of "qualifications, reliability, and fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000)).

### III. DECISION

#### A. Penniman's unannounced inspection of the Mountain Creek Resort does not justify barring his testimony.

Mountain Creek's first argument against the admissibility of Penniman's decision does not challenge the sufficiency or applicability of his expertise, rather it asks the Court to exclude Penniman's opinion as a sanction for failing to follow Rule 34. (ECF No. 76-6 at 3.) In his

deposition, Penniman admitted to taking an unannounced trip to the Resort in March 2023, where he conducted an examination of the Resorts' grounds to assess the site of the accident and the Resort's safety procedures in general. (Penniman Dep. (ECF No. 76-4) at 12:3–17:9.)

At the time of his inspection, the Resort was open to the public—Penniman purchased a lift ticket and used various paths and trials while taking pictures and making observations for his report. (*Id.* at 13:14–14:17.) In unrebutted testimony, other than bringing equipment for his inspection, Penniman acted as any other visitor to the Resort would, and he was never questioned about his presence at the park while conducting his evaluation. (*Id.* at 15:5 – 17:14.)[1] In his role as an expert, Penniman has been candid with the parties and the Court about the fact he provided no notice of his inspection, his motive for acting anonymously (to avoid a defendant making special preparations in advance of his visit), and that this is his regular practice when conducting an examination. (*Id.*)

When determining whether to impose a discovery sanction, the movant must first show that there has been a violation of the rules of discovery or the orders of the court. *Gloucester Twp. Bd. of Educ. v. E.N.*, Civ. A. No. 22-6568, 2024 WL 4834851, *5 (D.N.J. Nov. 19, 2024) ("Because no sanctionable discovery violation occurred, the circumstances present no attendant need for a remedy."). If there is a violation, the Court will then assess "whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties" using the *Pennypack* factors.

---

[1] Penniman also testified he walked around and took pictures near the base of the resort, and where the accident happened. (*Id.* at 13:14–14:17.) Ski resorts are typically in scenic locations, where guests often take pictures. Accordingly, neither Mountain Creek nor the National Ski Areas Association has a policy against photography or videography at the Resort, so long as it is done safely. *See* Mountain Creek, *Mountain Safety*, MOUNTAINCREEK (2025) https://mountaincreek.com/skiing-riding/mountain-safety/ [https://perma.cc/D6S3-PTUV], *see also* Mountain Safety National Ski Areas Association, *Your Responsibility Code* (2022) https://www.nsaa.org/NSAA/Safety/Your_Responsibility_Code.aspx [https://perma.cc/6AKK-C8JU].

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997). The five *Pennypack* factors are:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012). "The importance of the evidence is often the most significant factor." *Id.*

Here, Mountain Creek seeks to preclude Penniman "from testifying or providing opinions that derive in any way from this improper inspection." (ECF No. 76-6 at 11–13.) A sanction this broad would effectively strike Penniman's entire report—a pillar of plaintiff's case that Mountain Creek is not immune from suit under the New Jersey Ski Act. (Penniman Report at 3–9.) "The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)).

Plaintiffs argue there was no need for Penniman to get special permission from Mountain Creek to investigate a publicly accessible location, even if that location was owned by Mountain Creek. To support that argument, they cite several cases from outside this jurisdiction where a party had anonymously inspected the premises of another party's business. (ECF No. 78 at 14–15.) In *Varner v. Target Corp.*, the court refused to "exclude [expert] testimony on the basis of their site inspections." 2025 WL 475706 at *4 (U.S.D.C. Feb. 12, 2025). The court in *Varner* noted that in cases where the evidence had been excluded because of an improper inspection, "[t]he

7

sanctionable violation . . . was that the respective experts did not have *permission* to be on the properties and did not seek permission via Rule 34." *Id.* (emphasis added) (*citing Baugus v. CSX Transp., Inc.*, 223 F.R.D. 469, 470–71 (N.D. Ohio 2004); *Trevelyn Enters., LLC v. SeaBrook Marine, LLC*, Civ. A. No. 18-11375, 2020 WL 4437236 at *4 (E.D. La. Aug. 3, 2020)). Though "the most common and most proper procedure to inspect pursuant to Rule 34 is to coordinate an expert's inspection with opposing counsel," the court held that is not a strict requirement of the Rules when the expert has permission to enter the location. *Varner* at *4 n.4; *see also Willink v. Boyne USA, Inc.*, Civ. A. No. 12-74, 2013 WL 12141324 at *3 (D. Mont. Dec. 20, 2013) (allowing the inspection of a ski resort, where the resort was "open to and widely used by the public" and the inspection was of little "risk of injury").

 The Court finds the reasoning of these out-of-district decisions persuasive. Though the Rules provide procedures by which the parties may seek discovery from the other, they are not compelled to use them to gather evidence in every situation. Where the information is publicly available or can be gathered from a party's own investigations, a party may rely on that evidence entirely or in combination with discovery. *See* Fed. R. Civ. P. 26 (b)(1) ("[T]he scope of discovery is as follows: Parties *may* obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." (emphasis added)). Site inspections are no different, where the expert witness or investigator has permission to enter a property, they need not seek discovery to compel an inspection. *See Grabau v. Target Corp.*, 2008 WL 616068 at *3 (D. Colo. Feb. 29, 2008) (holding "failure to request an inspection" under Rule 34 is not "a basis for excluding evidence," because "Rule 34 is permissive rather than compulsory").

8

Mountain Creek's cited authorities do not suggest otherwise. Its first authority, *McConnell v. Canadian Pacific Realty Co.*, says nothing on this issue. 280 F.R.D. 188 (M.D. Pa. 2011). *McConnell* did not involve an unannounced inspection, rather the court was addressing a dispute between the parties about the appropriate scope of an inspection requested under Rule 34. *Id.* at 193 ("[P]laintiff's current inspection demand, which sets not temporal or topical limitations upon a physical examination of this property, does not in its current form satisfy Rule 34.") Though *Trevelyn Enters., LLC v. SeaBrook Marine, LLC*, involves an unannounced inspection, it is distinguishable. Civ. A. No. 18-11375, 2020 WL 4437236 at *2 (E.D. La. Aug. 3, 2020). In *Trevelyn*, the defendants' agent trespassed into a private boatyard to conduct a duplicative inspection, which plaintiffs had already refused, despite the fact that a motion to permit or deny this investigation was already pending before the court. *Id.* at *4. Penniman, by contrast, had purchased a ticket and therefore had permission to enter the Resort, and was not attempting to circumvent the Court's authority in making his inspection. (ECF No. 76-4 at 14:6–17:9.)

However, while Penniman had permission to enter the Resort, buying a ticket does not confer a boundless right to investigate. Though the plaintiff in *Baugus v. CSX Transportation, Inc.*, lacked permission to enter the property, it is nonetheless instructive. 223 FRD 469 (N.D. Ohio 2004). In *Baugus*, the plaintiff had entered a railyard and took video even though "leave had not been granted . . . to enter the premises or board the rail cars." 223 FRD at 471. This, in turn, denied the parties and court the ability to balance the "degree to which the proposed inspection [would] aid in the search for truth against the burdens and dangers created by the inspection." *Id.* Assessing safety concerns are not ordinarily an issue where the site of inspection has "opened its premises to the public," as the Resort has, with both parties acknowledge skiing is an inherently dangerous activity. (ECF No. 77-11 at 5–6; ECF No. 79-1 at 33–34.)

Though not argued by Mountain Creek, the Court has concerns regarding the safety of an unsupervised inspection of an operating ski resort. The Court would prefer parties not generate additional ski-injury lawsuits while investigating a previous suit. Therefore, the Court holds that where the premises are open to the public and the inspecting party has permission to enter (and does not deviate from the parameters of the permission), parties are not required to seek approval prior to inspection under Fed. R. Civ. P. 34(a)(2), unless the inspection poses a greater, articulable danger or burden to the business, employees, or other visitors than is expected of a typical visitor.

Applying this rule, Penniman acted in almost every way as an ordinary skier. According to his testimony, he "walked around the base area . . . where the accident happened," and brought equipment for his investigation, namely his "iPhone . . . measuring tape, and . . . a clinometer" app on the iPhone. (ECF No. 76-4 at 13:14–15:18.) As for his conduct, Penniman bought a lift ticket, "went skiing," and observed what the Resort "looks like naturally with the way a customer would look at it" without "special preparations." (ECF No. 76-4 at 14:8–17:9.)  Mountain Creek does not allege, nor does Penniman's testimony or report suggest, he impeded ski traffic, entered restricted or non-public areas, or otherwise posed a danger to himself or the other skiers. (ECF No. 76-6 at 11–13.) In other words, Penniman's unannounced inspection was not a discovery violation, and no sanction is warranted.

Even if Penniman's inspection was a discovery violation, Mountain Creek did not sufficiently argue that exclusion was warranted. Whether an expert's report or testimony should be excluded due to a violation of the rules of discovery is governed by the *Pennypack* factors, and Mountain Creek's "utter failure to address these factors to any degree in their motion warrants its denial." *Janssen Pharms., Inc. v. Alkem Lab'ys Ltd.*, Civ A. No. 23-2939, 2025 WL 2355957, at *3 (D.N.J. Aug. 14, 2025). Though Mountain Creek claims it is "severely prejudiced" by the

unannounced inspection, the only prejudice it cites is that it was "not present to observe the inspection," or able "to document the conditions observed or observable on that date." (ECF No. 80 at 3; ECF No. 76-6 at 3.) To the degree this qualifies as prejudice, it is fully addressable by Mountain Creek's right to cross examine Penniman, have its expert offer contrary evidence, and conduct inspections of its own. Therefore, Mountain Creek's Motion to Preclude the Testimony and Report of Mr. Penniman is **DENIED**.

> **B.    The Penniman Report is sufficiently reliable to assist the jury and will not be excluded.**

Mountain Creek's second argument for precluding Penniman's testimony and report from the jury is that he lacks a reliable foundation for his opinion. Mountain Creek seeks to exclude the following topics from Penniman's opinion: (1) the "use of blue fencing" in the skiing industry; (2) the role, if any, shadows played in causing the accident; (3) how most North American ski resorts organize their ski trails; and (4) whether the "progression area" used to train new skiers is a hazard when placed next to a trail for more experienced skiers. (ECF No. 76-6 at 15, 18, 20, and 22.) The Court addresses each in turn, applying the *Daubert* factors set forth above (*infra* at Section II).

> **1.    Penniman is permitted to testify to the relative advantages of fence coloring at different ski resorts**

In his expert report, Penniman discusses the significance of fencing colors on the safety of skiing trails. (Penniman Report at 4–5.) According to Penniman, "blue fabric fencing such as that with which Mr. Perciballi became entangled can be very difficult to discern from shadows on the snow surface later in the day," and for that reason the industry standard is that "any fencing, hazard marking or safety signs be brightly colored and highly visible so as to attract attention." (*Id.* at 3.) However, Mountain Creek believes that this testimony lacks "factual evidence from the record in

this case," and is instead "based solely on his personal experience and limited discussions with ski patrollers." (ECF No. 76-6 at 16.)

The Court disagrees. "In cases not involving scientific testimony . . . 'relevant reliability concerns may focus upon personal knowledge or experience,'" and still be permitted under *Daubert*. *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002) (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–150 (1999)). Mountain Creek correctly points out (ECF No. 76-6 at 16) that even where an expert is testifying to his or her personal experience, "expert's testimony must be accompanied by a sufficient factual foundation." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983). But Penniman's report and testimony contain sufficient foundation. It is uncontested that: (1) Mountain Creek used blue fencing at the time of the accident (ECF No. 78 at 6; ECF No. 80 at 8); (2) Plaintiffs' accident happened in the afternoon (Deposition of Pierino Perciballi (ECF No.77-4 at 60:20–60:25); (3) Penniman made an inspection of the site of the accident and observed the shadow cover of the area in the afternoon (Penniman Report at 5; ECF No 76-6 at 4); (4) at least some ski resorts in North America use brightly-colored fencing (Penniman Report at 5); and (5) Penniman claims, in his professional experience, use of brightly-colored fencing is standard (ECF No.76-4 at 98:8–12). This is a sufficient factual foundation whereby a reasonable jury could find that such a standard exists, should they credit Penniman's testimony.

### 2.    Penniman may not testify that the shadows 'caused' Plaintiffs' accident.

The Penniman Report also assesses the role that shadows play in terms of hazardous course conditions while skiing, both in general and in how it contributed to Plaintiffs' accident in particular. (ECF No. 76-4 at 3.) Mountain Creek challenges the admissibility of these claim on two grounds. First, it argues Penniman improperly opined on the cause of an accident he was not present to witness, and of which has no personal knowledge. (ECF No. 76-6 at 16) Second,

12

Mountain Creek interprets Penniman's opinion as contradicting the fact witnesses in this case without cause and believes the contradiction is severe enough to warrant precluding his testimony. (*Id.* at 21.) The first of these challenges is well-founded, the latter is not.

Mountain Creek specifically objects to a line in the Penniman Report claiming "the shadows appear[] to have caused Mr. Perciballi not to discern the difference between the long tree and pole shadows across his path and the blue fence." (Penniman Report at 3.) In making this conclusion, Penniman does not quote Mr. Perciballi or his son, and by his own testimony has not personally spoken to either fact witness. (ECF No. 76-4 at 34:20–35:7.) *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, is instructive—"[a]n expert opinion is not admissible if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts." 82 F.3d 69, 75 (3d Cir. 1996). An expert may testify as to his or her opinion on the ultimate cause of an injury, even "in the absence of complete information," so long as the expert has sufficient direct knowledge to ground his or her opinion. *Matlin v. Langkow*, 65 F. App'x 373, 383 (3d Cir. 2003) (permitting a doctor to serve as an expert witness and to testify that the "the automobile accident caused [Plaintiff's] injuries" because he personally "examined" and discussed the accident with the plaintiff) (citing *In re Paoli*, 35 F.3d at 742). But when an expert opinion "is not based on any direct or circumstantial evidence," it is inadmissible conjecture, even if the safety measures the expert advocates for would have made the injury "less likely." *Fedorczyk*, 82 F.3d at 75. Penniman's inspection of the site on a different day, without personally witnessing or reviewing the accident, is not sufficient personal knowledge to testify about its cause.

To the extent Mountain Creek challenges the admissibility of *any* opinion offered by Penniman pertaining to shadows on the ski track, the Court finds this opinion admissible. Mountain Creek appears to argue all Penniman's testimony on this topic should be precluded, because it

13

contradicts the deposition of Mr. Perciballi, but that is an overreading of Mr. Perciballi's testimony. (ECF No. 76-6 at 19–20) As the court stated before, it is well-settled an "expert's testimony must be accompanied by a sufficient factual foundation." *Gumbs*, 718 F.2d at 98. Were Penniman to offer opinion on dangers that were wholly absent, or contradicted, by all witnesses it would indeed lack foundation. *Id.* (finding that where "no evidence was presented to demonstrate . . . [a likely] increase in income" the expert's opinion lacked foundation). But Mr. Perciballi's testimony is consistent with Penniman, Mr. Perciballi testified the allegedly downed portion of the fence "was not visible" as Mr. Perciballi "looked straight ahead . . . [he] didn't see anything blue on the floor." (Deposition of Mr. Perciballi (ECF No. 77-4) at 136:19–137:4.) Mr. Perciballi may believe the lack of visibility was caused by snow cover, rather than shadows, but this is consistent with the Penniman Report which states that shadows and snow make blue mesh fencing less visible. (*Id.* at 137:5–9; Penniman Report at 3.)

Therefore, the Penniman Report is precluded where it comments directly on the cause of the accident, for which Penniman has no personal knowledge, and he will not be permitted to testify that shadow cover conclusively caused the accident. But his opinion as to how shadow cover can impact the visibility of hazards in general and pursuant to his site inspection are acceptable expert opinion.

> **3. Testimony about an alleged generally-applicable standard for ski course design is admissible, even when based on personal experience.**

Finally, Mountain Creek objects to the sections of Penniman's report and testimony that claim the "standard custom and best practice" of ski resorts is to have "learning areas . . . separated geographically from the other trails," to avoid conflict with other skiers. (Penniman Report at 4.)

Mountain Creek contends that this is an attempt to hold it to a "standard personal to [Penniman]" and not an actually-existing industry standard. (ECF No. 76-6 at 23.)

However, Mountain Creek does not provide a legal basis for its assertion that Penniman must have a "written . . . industry standard," to support his opinion that the placement of the learning area at the Mountain Creek resort was not best practice. (ECF No. 76-6.) Rather, it cites to a single case, *Fernandez v. Baruch*, which requires an expert witness to testify to "generally accepted medical standards," specifically in the medical malpractice context. 244 A.2d 109, 112 (1968); (ECF No. 76-6 ). Aside from the difference in legal contexts, the opinion at issue in *Baruch* was, on its face, exclusively the personal opinion of the doctor, prefaced with "it is my opinion." *Id.* The Court need not decide whether *Baruch* applies to all expert witnesses who opine on the issue of industry standards, or just when they do so in the context of medical malpractice, because Penniman's testimony pertains to a generally applicable industry standard.

Plaintiffs argue Penniman is not testifying that Mountain Creek failed by not living up to his personal standard. Instead, they contend he is testifying that there is an unwritten industry standard and—as an expert—he is in a position to know it. (ECF No. 78 at 25) To support their interpretation of Penniman's opinion, Plaintiffs offer several surveys and reports on the safety protocols of ski resorts authored by Penniman, most notably The California Mountain Resort Safety Report: Survey Methodology and Scoring Criteria (the "California Mountain Report"), as evidence of his knowledge of ski safety standards. (*Id.* at 26.) For his part, Penniman also testified in his deposition about this study and the research he performed for that study alongside his personal observation of the practices at "over 300 ski areas in the U.S.," which formed the basis for his opinion that it is an industry standard for resorts to separate learning areas "geographically." (76-4 at 116:4–117:25.)

This may be a "shallow basis as to any industry standard," (ECF No. 76-6 at 21) as Mountain Creek says, but it is nonetheless sufficient for the "liberal policy of admissibility," for expert opinions. *Kannankeril*, 128 F.3d at 806–07. Mountain Creek's argument here goes to the weight afforded to Penniman's report and testimony, not its admissibility.

For the foregoing reasons, Mountain Creek's motion to preclude Penniman's expert report and testimony is **GRANTED** with respect to whether Plaintiffs' accident was caused by shadows on the course and **DENIED** with respect to all other objections. This denial is without prejudice to Mountain Creek's ability to raise motions in limine, voice objections to Penniman's testimony, or cross examine any element of his testimony.

### C. Experience as a professional ski instructor and ski resort safety consultant are sufficient to testify as an expert.

Mountain Creek also challenges Penniman's qualifications to give his opinion on how skiers typically act, and how they navigate a trail because he is "not trained in human factors, human behavior, biomechanics, engineering, [or] psychology." (ECF No. 76-6 at 24.) They support this position by referring to portions of Penniman's testimony where he was unable to quantify the reaction time of the average skier, and admitted to not having collected specific data on reaction times for the parts of his report discussing "skier behavior," merely relying on his "decades of experience with skier experience and ski area design." (*Id.* at 24–26.)

But a witness need not possess specific academic credentials or formal training. *Betterbox* 300 F.3d at 327–328. The Third Circuit is clear that "specialized knowledge can be practical experience as well as academic training and credentials," so long the witness possesses "skill or knowledge greater than the average layman." *Id.* Penniman's work encompasses both forms of knowledge; it is apparent from his work, testimony, and publications that he is an expert with

16

considerable qualitative knowledge of skier behavior and expectations. (Penniman Report at 14–17; ECF No. 78 at 29–30.)

Mountain Creek's assertion that Penniman's decades of experience as a trainer, ski patrol member, and ski trail safety designer "does not constitute superior knowledge, education, experience or skill on the subject matter of skier's behavior," to a jury who may have never skied before, because he does not have an unrelated degree in "human factors, human behavior, biomechanics, engineering, [or] psychology," is not credible. (ECF No. 80 at 18.) "It is well settled that an expert cannot be excluded because the trial court does not deem the proposed expert to be the most qualified or because the proposed expert does not have the specialization the Court considers to be the most appropriate." *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 167 (D.N.J. 2008). Penniman meets "the liberal minimum qualifications" for admissibility, so the gaps in his understanding of skier behavior "goes to credibility and weight, not admissibility" of his opinion. *Id.*

The Court finds Penniman is sufficiently qualified to serve as an expert on skier behavior and expectations. Accordingly, Mountain Creek's motion to preclude Penniman from testifying as an expert on skier behavior is therefore **DENIED**.

IV.  **CONCLUSION**

Mountain Creek's Motion to Preclude Penniman's Testimony and Opinions is **GRANTED IN PART**, Penniman will not be permitted to offer an opinion or testify as to the ultimate cause of the accident, and **DENIED** on all other grounds.

Date: January 29th, 2026                                   *s/ Brian R. Martinotti*
                                                          HON. BRIAN R. MARTINOTTI
                                                          UNITED STATES DISTRICT JUDGE