<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PIERINO PERCIBALLI and BRIGIDA R. PERCIBALLI, h/w, <br><br>               Plaintiffs, <br><br>            v. <br><br>MOUNTAIN CREEK RESORT INC.; MOUNTAIN CREEK MANAGEMENT, LLC; GREAT GORGE; SNOW CREEK, LLC D/B/A MOUNTAIN CREEK RESORT, INC., SNOW OPERATING, LLC; SNOW PARTNERS, LLC; JOHN DOE SKI RESORT OPERATORS (1-5); JOHN DOE SKI RESORT MAINTENANCE COMPANIES (1-5); JOHN DOE SKI RESORT INSPECTION AND SAFETY COMPANIES (1-5), <br><br>               Defendants. | Case No. 2:23-cv-00948 (BRM) (SDA) <br><br>**OPINION** |

**M**ARTINOTTI**, D**ISTRICT **J**UDGE

       Before this Court is a Motion for Summary Judgment (ECF No. 77) filed by Defendants Mountain Creek Resort Inc.; Mountain Creek Management, LLC; Great Gorge; Snow Creek, LLC D/B/A Mountain Creek Resort, Inc., Snow Operating, LLC; Snow Partners, LLC, alongside one to fifteen fictious defendants who are "entities or persons that maintained, controlled, constructed, inspected, designed, repaired, and/or monitored the Mountain Creek Resort, . . . controlled, monitored, inspected, and/or observed the ski trails and skiing activities at Mountain Creek Resort . . . (and/or) controlled, monitored, inspected, and/or observed the ski trails and skiing activities at Mountain Creek Resort" (collectively, "Mountain Creek") (Compl. (ECF No. 1) ¶¶ 32–34). Mountain Creek seeks judgment on all tort claims brought by Pierino Perciballi ("Mr. Perciballi")

and the derivative loss of consortium claim brought by his wife Brigida Perciballi ("Mrs. Perciballi") (collectively, "Plaintiffs"). (Mountain Creek's Br. in Support of Summary Judgment (ECF No. 77-11).) Plaintiffs filed a brief in response, arguing there remained disputed issues which can only be resolved by a jury. (ECF No. 79-1.) Mountain Creek filed a timely reply brief, and the matter is properly before the Court. (ECF No. 81.)

In addition to its motion to dismiss, Mountain Creek moved to preclude Plaintiffs' expert (ECF No. 76) Richard Penniman from testifying on the safety of Mountain Creek's ski resort or introducing his expert report into evidence (Expert Opinion Report of Penniman ("the Penniman Report") (ECF No. 76-3)). The Court previously granted, in part, Mountain Creek's Motion to Preclude, therefore the Court will only consider the remaining portions of the Penniman Report (as well as his testimony) as part of Plaintiffs' evidence for the purposes of deciding this Motion for Summary Judgment.[1] (ECF No. 83.) The specific evidence precluded is addressed in this Court's opinion addressing those Mountain Creek's Motion to Preclude. (*Id.*)

Having reviewed and considered the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Fed. R. Civ. P. 78(b), for the reasons set forth below and for good cause appearing, Mountain Creek's Motion for Summary Judgment is **DENIED**.

**I.     BACKGROUND**

   **A.     Factual Background**

This case arises from a skiing accident that occurred at Mountain Creek's ski resort ("the Resort"). (ECF No. 1 ¶¶ 1 & 4; Ans. (ECF No. 12) ¶¶ 1 & 4.) On February 21, 2021, Mr. Perciballi

---

[1] The Court has excluded Perciballi's conclusions regarding the ultimate cause of the accident and will not consider that as part of Plaintiffs' disputed facts. (ECF No. 83.)

2

and his sixteen-year-old son Matteo Perciballi skied down Matchmaker trail (*id.* ¶ 50), an intermediate difficulty terrain park course contained within the Resort (Pls.' Br. Ex. A. (ECF No. 79-4)). Matchmaker trail is adjacent to the Resort's "learning area." (*Id.*) Mountain Creek uses blue, mesh fencing to separate Matchmaker trail from the learning area. (ECF No. 1 ¶¶ 1–4; Mountain Creek's Statement of Undisputed Facts (ECF No. 77-12) ¶ 3.) In his descent down Matchmaker trail, Mr. Perciballi collided with this blue fencing, tangling his legs and violently falling to the ground. (ECF No. 1 ¶¶ 67–69.) This collision caused significant injuries, requiring four days of hospitalization and leaving him with an ongoing disability. (ECF No. 1 ¶¶ 76–77 & 83–84.)

It is the blue fencing Mr. Perciballi collided with which is the subject of the parties' factual disputes. According to Plaintiffs, the blue fencing was down for an indeterminate amount of time before Mr. Perciballi's accident due to a negligent pattern of conduct wherein Mountain Creek did not inspect or maintain the condition of the fencing over the course of the day. (ECF No. 1 ¶ 93.) Plaintiffs also argue that the color of the fencing deviates from the industry's safety standards, which they claim require highly visible, brightly colored fencing. (ECF No. 76-3 at 4.) Finally, Plaintiffs believe the Resort itself was negligently designed by placing the learning area adjacent to an intermediate slope, requiring the erection of a hazardous obstacle, namely the fencing, to prevent skiers from crossing into the other area. (ECF No. 1 ¶ 93.)

Mountain Creek disputes Plaintiffs' characterization. It agrees that it has placed this fencing between the courses as a necessary safety precaution—as required and immunized by the N.J. Stat. Ann. § 5:13-1 *et seq.* (the "New Jersey Ski Statute"). (ECF No 77-12 ¶¶ 16–19.) Mountain Creek maintains that the use of blue fencing is within the standards of North American

ski resorts and that its employees are trained to monitor and remove hazards, including downed fencing, from its courses at all times. (ECF No. 79-12 ¶¶ 14–19.)

### B. Procedural Background

Plaintiffs filed this case on February 17, 2023, alleging two causes of action: (1) negligent management and design of the Resort resulting in Mr. Perciballi's injuries, and (2) loss of consortium on behalf of his wife Mrs. Perciballi. (ECF No. 1 ¶¶ 86–98). Mountain Creek answered on April 20, 2023, denying all claims but not moving to dismiss. (ECF No. 12.) Fact discovery ended September 11, 2024 (Am. Pretrial Scheduling Order (ECF No. 51)), and expert discovery concluded March 12, 2025 (Letter from Edward J. Turro, Esq. (ECF No. 63)).

The parties submitted their dispute to mediation on April 4, 2025, but were unable to resolve their different positions on liability and damages. (ECF No. 69.) Thereafter, Mountain Creek moved to preclude the testimony and expert report of Richard Penniman (ECF No. 76) and further moved before the Court for summary judgment on all claims (ECF No. 77). Plaintiffs filed responses, arguing Penniman's testimony and report were admissible (ECF No. 78), and that summary judgment was not warranted (ECF No. 79). Mountain Creek filed a reply brief in support of precluding Penniman (ECF No. 80), and in favor of summary judgment (ECF No. 81). The Court issued its ruling on Mountain Creek's motion to preclude in a separate opinion and order. (ECF No. 83 and ECF No. 84.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs

citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any

5

weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting Anderson, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255). If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could

6

return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248)

### III.  DECISION

#### A.  Disputed Statements of Fact

In support of summary judgment, Mountain Creek filed a Statement of Undisputed Facts (the "Statement of Facts") as required by Fed. R. Civ. P. 56(c) and Local Rule 56.1. (ECF No. 77–12)). The Plaintiffs responded with an opposition to Mountain Creek's Statement of Facts—admitting to many of the alleged facts, but denying others accompanied by citations to the record which they believe supports a factual dispute. (Pls.' Opp'n to Mountain Creek's Statement of Facts (the "Disputing Statement") (ECF No. 79)).

Mountain Creek bears the burden of showing that there is no dispute of material fact, and Plaintiff's "evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino*, 358 F.3d at 247 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). However, if the Plaintiffs' response does "not actually reject the paragraphs it responded to," or their "cited exhibit does not actually refute the relevant fact," the Court may deem a given fact not in dispute for the purposes of the motion for summary judgment regardless. *TLE Mktg. Corp. v. WMB, LLC*, No. 17-11752, 2023 WL 2433884, at *1 (D.N.J. Mar. 9, 2023) (quoting *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019)).

Mountain Creek asks the Court to deem admitted that although Mr. Perciballi testified the fence was "downed" at the time he was skiing, there is no "evidence to establish when[,] . . . how long[,] . . . [and] how the fence allegedly came down." (ECF No. 77-12 ¶ 4.) Plaintiffs contend they have provided evidence "including photographs . . . that these fences were constantly sagging," throughout the day. (ECF No. 79 ¶ 4.) Though this may be evidence of Mountain Creek's

7

alleged negligence, it does not show when, how, or for how long the fence was down. Accordingly, Statement of Fact No. 4 is deemed **ADMITTED**.

It is undisputed that before Mr. Perciballi skied down Matchmaker trail, his son Matteo skied down the same trail without injury. (ECF Nos. 77-12 ¶ 6 & ECF No. 79 ¶ 6.) Mountain Creek claims this was "[i]mmediately prior" to Mr. Perciballi's accident (ECF No 77-12 ¶ 6) and points to the fact that Matteo was able to arrive and film where his father fell "within minutes" of the accident (ECF No. 81 at 3). Plaintiffs emphasize Matteo and his father started the run together, but separated shortly thereafter and Matteo descended first. (ECF No. 79 ¶ 6). The parties do not dispute that the accident occurred near the base of the mountain (ECF Nos. 77-12 ¶ 4 & ECF No. 79 ¶ 4), where Matteo would be after finishing his run regardless of the length of separation. There is not sufficient evidence of the time lapse between when Matteo and Mr. Perciballi descended the Matchmaker trail and the Court draws all reasonable inferences in favor of Plaintiffs, therefore whether Matteo skied down matchmaker trail "immediately" prior to his father is deemed **DISPUTED**.

The parties also dispute whether Mr. Perciballi "decided" to ski through what he believed to be a gap in the fencing after "s[eeing] blue fencing ahead of him on the right and on the left." (ECF No. 77-12 ¶ 13.) Plaintiffs claim, rather than making an active decision, Mr. Perciballi was merely "following the natural flow of the mountain." (ECF No 79 ¶ 13.) Mr. Perciballi testified at his deposition he was in control of his skiing during his decent of matchmaker hill, and therefore he did 'decide' to ski through what he perceived as an opening in the fencing. (Deposition of Mr. Perciballi (ECF No. 77-4) at 78:14–17.)) Following the "natural flow of the mountain" is a description of how Mr. Perciballi made his decision to ski over an allegedly down portion of the

fencing, not whether he did in fact make this decision. Therefore, this fact will be deemed **ADMITTED**.

Mountain Creek also asks the Court to deem it an admitted fact that "ski patrol members at [the Resort] inspect the trails and skiable terrain prior to the opening of the [R]esort and throughout the day and remove any hazards on the trails." (ECF No. 77-12 ¶ 14.) However, Plaintiffs point to the testimony of Tim Stone, the director of the ski school at Mountain Creek, that employees of Mountain Creek "wouldn't . . . take any action while the fence is sagging" and will only act to fix the hazard when "it hits the ground." (ECF No. 79 ¶ 14.) However, this testimony comes from the director of the ski school and only refers to employees of the ski school, not the ski patrol. (*Id.*) For this reason Mountain Creek asks the Court to deem this fact admitted. (ECF No. 81 at 5.) Drawing inferences in favor of the non-moving Plaintiff, *Marino*, 358 F.3d at 247, the testimony of the director of the ski school could be evidence as to the broader policies of the Resort, and this fact is therefore deemed **DISPUTED**.

After Mr. Perciballi was injured, Mountain Creek's Ski Patrol Director Paul Bruno went to inspect the scene of the accident, and the fencing had already been reinstalled. (ECF Nos. 77-12 ¶ 15 & ECF No. 79 ¶ 15.) According to Mountain Creek, the reinstallation occurred "shortly" after the accident. (ECF No. 77-12 ¶ 15.) Plaintiffs dispute this characterization, pointing to Bruno's investigation report which places his arrival an hour and half after the accident. (ECF No. 79 ¶ 15.) Whether the fence had been reinstalled "shortly" after the accident is therefore deemed **DISPUTED**.

During his deposition, the director of the ski school gave arguably conflicting testimony regarding how employees of the Resort are trained. (ECF Nos. 77-12 ¶ 17 & ECF No. 79 ¶ 17.) Mountain Creek emphasizes the director's testimony, claiming employees are trained to "keep

9

eyes on all of their operating areas for issues such as downed fencing" (ECF No. 77-12 ¶ 17), whereas Plaintiffs focus on his testimony that employees are not trained to respond to some potential hazards like sagging fences (ECF No. 79 ¶ 17). As Mountain Creek points out, Plaintiffs do not cite any testimony supporting its denial in this paragraph. (ECF No. 81 at 6.) However, even though L. Civ. R. 56(a) requires a party disputing a statement of fact to "cit[e] to the affidavits and other documents submitted in connection" with its opposition, here the Plaintiffs cited and quoted the relevant testimony a mere two paragraphs before. (ECF No. 79 ¶ 15.) Plaintiffs' failure to fully comply with the Local Rule is therefore *de minimis*, and the Court will deem this this fact **DISPUTED**.

As for Mountain Creek's final statement of fact (ECF No. 79-12 ¶ 19), in Mountain Creek's own words, Mountain Creek "merely cites to a provision of the New Jersey Ski Statute," which does not contain any factual elements. (ECF No. 81 at 7.) The Court will therefore not deem it a statement of fact, disputed or otherwise.

### B.     Mountain Creek's motion for summary judgment is denied.

#### 1.    There remains dispute over whether Mountain Creek possessed constructive notice of the allegedly downed fence.

There is no dispute the New Jersey Ski Statute, N.J. Stat. Ann. § 5:13-1 *et seq*, applies to Mr. Perciballi's tort claims. (ECF No. 77-11 at 6; ECF No. 79.) The New Jersey Ski Statute recognizes skiing is an inherently dangerous activity and skiers accept a certain level of risk "which must be borne by those who engage in such activities, and which are essentially impracticable or impossible for the ski area operator to eliminate." N.J. Stat. Ann. § 5:13-3(d). So long as "ski area operators," like Mountain Creek, fulfil their responsibilities under the statute, "there can be no recovery" for injuries which befall skiers despite the operator's safety measures. *Id.* Plaintiffs

contend Mountain Creek is liable under the New Jersey Ski Statute because Mountain Creek allegedly failed to "[r]emove as soon as practicable obvious, man-made hazards" in the form of sagging or downed blue fencing. N.J. Stat. Ann. § 5:13-3(a).

Despite Plaintiffs' protests to the contrary, there is no evidence in the record that Mountain Creek ever had knowledge of the downed fencing, *see supra* Section III.A, let alone sufficient time to correct the hazard as required for liability under N.J. Stat. Ann. § 5:13-3(d). However, Plaintiffs correctly point out the "operator's duty" under the New Jersey Ski Statute involves "constructive notice," and the operator may be liable if it "should have reasonably known of" a potential hazard and failed to act. *Brett v. Great American Recreation, Inc.*, 677 A.2d 705, 715 (1996).

Though Mr. Perciballi testified the fencing had completely fallen and was covered by snow at the time of the accident, he does not argue Mountain Creek knew of and had time to respond to the fence after it had fallen completely. (ECF No. 79-1 at 29.) Instead, Plaintiffs focus on the fact the fence in question was allegedly "constantly sagging" (*id.* at 16) throughout the day, including in the photographs taken an hour and a half after Mr. Perciballi's accident (Pls.' Ex. K, Photograph of the Fence from Mountain Creek's Investigation (ECF No 79-14 at 5)).



*Photograph from Mountain Creek Investigation (ECF No. 79-14 at 5)*

11

The parties dispute what this photograph demonstrates. According to Mountain Creek, this photo proves its diligence in erecting and maintaining the safety features of its Resort, because "shortly after the accident," once Mr. Perciballi had been sent to receive medical attention "the fence in question was already back up and reinstalled. (ECF No. 77-1 at 9.) Plaintiffs do not contest that the fence was reinstalled within an hour and a half, instead they emphasize that "the blue fence was difficult to see . . . [and] sagging in multiple places," a mere hour and a half after the accident (ECF No. 79-1 at 35) even though Mountain Creek's own operating procedure requires fences be set up "tight and straight" (*id.* at 11; Pls.' Ex. G, Mountain Creek Standard Operating Procedure (ECF No. 79-10).[2]

This fence was placed at the base of the mountain, and was adjacent to the "progression area," where it would have been in constant view of the ski school employees who could take action to fix the allegedly sagging fence. (Pls.' Ex. D, Mountain View Investigation of Accident (ECF No. 79-7) at 2.) However, the director of the ski school—who was presented with a photo (ECF No. 79-4 at 5) of the fencing sagging to the degree it was nearly on the ground—testified that because "the center of the fence is off the ground" it was "acceptable" and employees would not have taken any action or made any note of potential danger (Pls.' Ex. J, Deposition of Tim Stone (ECF No. 79-13) at 98:15–25). The director continued to testify the ski school employees

---

[2] Plaintiffs also suggest, but do not directly allege, "that a forty-foot piece of fencing, that [Mountain Creek] put in place and had a duty to inspect, was down at the base of the mountain covered in snow before Mr. Perciballi collided with it." (ECF No. 79-1 at 3.) However, this "forty-foot" figure is based on the Mountain Creek's investigation of the site after Mr. Perciballi's ran into it at significant speed. (*Id.* at 9.) This collision would almost certainly be responsible for some portion of the fence which was down at the time of the investigation; therefore, the Court finds the inference that all forty feet were down prior to the collision to be unjustifiable. *Marino*, 358 F.3d at 247. Nevertheless, Plaintiffs are clear this is not the entire basis of their opposition to summary judgment.

were not trained to repair the fence, no matter how much the fence dipped, until "the moment it hits the ground" at which point they would finally "make note" of the hazard and "take action." *Id.* at 99:14-21.[3] Plaintiffs have also introduced the Penniman Report to argue these dangers were further compounded by Mountain Creek's use of allegedly low-visibility fencing, against the industry standard. (ECF No. 76-3 at 3.)

In reply, Mountain Creek points to evidence of its own and asks the Court to find its version of events more credible. Specifically, Mountain Creek points to the fact that Matteo Perciballi skied down the Matchmaker trail prior to his father, "minutes before . . . without noticing downed blue fencing." (ECF No. 81 at 2.) From this, Mountain Creek asks the Court to draw the "more reasonable inference" that "the allegedly dangerous condition of the fencing did not exist at the time." (*Id.*) This, the Court may not do. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Lauria v. Lieb*, 152 F.4th 549, 553 (3d Cir. 2025) (quoting *Marino*, 358 F.3d at 247). Even "a single, non-conclusory affidavit . . . when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.'" *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320 (3d Cir. 2014). Accordingly, the Court draws all justifiable inferences in favor of the Plaintiffs—the nonmovant here—not merely the inferences it considers most reasonable. *Marino*, 358 F.3d at 247.

---

[3] This understanding of Mountain Creek's safety protocols is contested by the parties. The director of the ski patrol, is clear: members of the ski patrol are trained to inspect the courses and diligently fix hazards throughout the day which includes fences that are "leaning or down." (Mountain Creek's Ex. G, Deposition of Paul Bruno (ECF No. 77-8) at 21:2-25). However, for the purposes of a motion for summary judgment Plaintiffs' "evidence is to be believed." *Anderson*, 477 U.S. at 255.

Here, even if Mountain Creek was "not actually aware of its dangerous potential," if a reasonable jury were to conclude "its dangerousness was obvious and thus impute[] constructive knowledge [to the defendant]," the motion for summary judgment shall not be granted. *Brough v. Hidden Valley, Inc.*, 711 A.2d 382, 386 (App. Div. 1998) (reversing summary judgment for defendant's failure to keep a safety cover over a concrete block near a ski course, even where defendant lacked actual knowledge of the hazard). A reasonable jury could find from Plaintiffs' evidence Mountain Creek had notice of an obvious hazard where it allegedly allowed a low-visibility fence to persistently sag directly in front of the progression area where its employees had a clear view and access to the danger at all time—either because the sagging fence itself posed a hazard to skiers or because it serves as constructive notice of the danger posed by such a fence when it falls. The Court will therefore not grant summary judgment.

### 2. Whether Mountain Creek negligently ran its resort is factually disputed.

Mountain Creek also requests summary judgment as it pertains to Plaintiffs' argument that the Resort was negligently designed. (ECF No. 77-11 at 9.) Plaintiffs argue Mountain Creek's decision to place the progression area so close to more advanced courses—necessitating a fencing barrier—was negligent compared to an industry standard of separating learning areas from other courses geographically. (ECF No. 76-3 at 4.) According to the Penniman Report, separating the courses geographically would prevent "skiers and snowboarders from interfering with students," without erecting barriers "in an egress route" of a more advanced course such "the blue fence," which caused Mr. Perciballi's accident. *Id.* Mountain Creek argues this is an attempt to evade the immunity from any liability due to the "location of . . . equipment necessary for the ordinary operation of the ski area, such as . . . fencing of any type," under the New Jersey ski statute. (ECF No. 77-11 at 10–11 (quoting N.J. Stat. Ann. § 5:13-3(b)(3)).)

There is no dispute as to whether fencing is ordinary and necessary equipment for ski area operation, however Mountain Creek's argument mischaracterizes Plaintiffs' position in two ways. First, Plaintiffs' theory does not rely on the specific placement of the fence, rather the condition of the fence at the time of the accident. As Plaintiffs argue, even where the placement of the fence is not a basis for liability, "something [may have] happened to [the fence] after [its] installation which rendered [it] hazardous and not necessary for the ordinary operation of the facility." *Neustadter v. Mountain Creek Resort, Inc.*, No. L–670–03, 2008 WL 398807 at *4 (N.J. Super. Ct. App. Div. Feb. 15, 2008). Though the plaintiff in *Neustadter* had not presented sufficient evidence of this hazardous condition "to allow the jury reasonably to find liability," *Neustadter* No. L–670–03, 2008 WL 398807, at *1, Plaintiffs here have presented sufficient evidence for this case to be placed before the jury, *see supra* Section III.B.1.

Second, Plaintiffs are not challenging the placement of the fencing, but the placement of the courses themselves. This is a thin distinction, but one embraced by New Jersey courts. In *Brett v. Great Am. Recreation, Inc.*, the Supreme Court of New Jersey held the jury should consider questions of negligence course design, such as whether "it was appropriate to locate the parking lot" so close to the bottom of the trail the plaintiffs were on, or whether "a ski-lift tower placed where skiers might be expected to crash into it is a non-inherent, man-made risk if it could have been placed in a safer location." 677 A.2d 705, 716–19 (1996). To the degree the placement of the courses is relevant to Mr. Perciballi's injuries, it falls under the question of negligent course design and management and may be considered by the jury.

### C. Mrs. Perciballi's Loss of Consortium claim survives because the underlying tort claim also survives.

Mountain Creek argues Mrs. Perciballi's loss of consortium claim should be dismissed because it is a derivative suit from Mr. Perciballi's tort claim. (ECF No. 77-11 at 12.) Plaintiffs agree loss of consortium is a derivative claim to Mr. Perciballi's own tort and rises or falls alongside it. (ECF No. 79-1 at 39.) Indeed, "the right to recover on a loss of consortium claim depends on the existence of tortious conduct on the part of the defendants." *Magnifico v. James*, No. A-0883-18T3, 2019 WL 6487290 (N.J. Super. Ct. App. Div. Dec. 3, 2019) (*citing Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219 (D.N.J. 2000)).

Here, there remains a dispute of fact as to whether Mountain Creek acted negligently in its monitoring of hazards on the ski course, or in the operation of the Resort in general. Therefore, the Court denies summary judgment with respect to Mrs. Perciballi's loss of consortium claim.

## IV. CONCLUSION

For the reasons set forth above, Mountain Creek's Motion for Summary Judgment is **DENIED**.[4] An appropriate order follows.

**Date: January 29th, 2026**                                  */s/ Brian R. Martinotti*
                                                              **HON. BRIAN R. MARTINOTTI**
                                                              **UNITED STATES DISTRICT JUDGE**

---

[4] In light of the Court's ruling and the present posture of litigation the Court believes the parties will benefit from a settlement conference at this juncture. (Summary Judgment Order (ECF No. 86).)