**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PIERINO PERCIBALLI and BRIGIDA R. PERCIBALLI, h/w,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNTAIN CREEK RESORT INC.; MOUNTAIN CREEK MANAGEMENT, LLC; GREAT GORGE; SNOW CREEK, LLC d/b/a MOUNTAIN CREEK RESORT, INC.; SNOW OPERATING, LLC; SNOW PARTNERS, LLC; JOHN DOE SKI RESORT OPERATORS (1-5); JOHN DOE SKI RESORT MAINTENANCE COMPANIES (1-5); JOHN DOE SKI RESORT INSPECTION AND SAFETY COMPANIES (1-5),<br><br>Defendants. | Case No. 2:23-cv-948 (BRM) (AME)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Snow Creek, LLC d/b/a Mountain Creek Resort, Inc.'s ("Defendant") Motion for Reconsideration ("Motion") (ECF No. 108) of the Court's January 29, 2026 Order Denying Summary Judgment (ECF No. 86). Plaintiffs Pierino Perciballi and Brigida R. Perciballi (together, "Plaintiffs") filed an Opposition. (ECF No. 112.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion is **DENIED.**

## I. Background

The Court incorporates by reference the underlying facts set forth in its January 29, 2026 Opinion Denying Summary Judgment ("Opinion"). (ECF No. 85.) Plaintiffs filed their Complaint on February 17, 2023, alleging two causes of action: (1) negligent management and design of Defendant's resort resulting in Mr. Perciballi's injuries, and (2) loss of consortium on behalf of Mr. Perciballi's wife. (ECF No. 1 ¶¶ 86–98.) Defendant answered on April 20, 2023. (ECF No. 12.) Following discovery, Defendant moved before this Court for summary judgment on all claims. (ECF No. 77.) The Court denied summary judgment in its January 29, 2026 Order ("Order"). (ECF No. 86.)

In its Opinion, this Court held there remained a genuine issue of material fact regarding whether Defendant possessed constructive notice of the allegedly downed fence. (ECF No. 85 at 10–14.) The Court also allowed Plaintiffs' theory of negligent design to survive summary judgment and found Defendant was not entitled to N.J. Stat. Ann. § 5:13-3(b)(3)'s grant of immunity from any liability due to the "location of . . . equipment necessary for the ordinary operation of the ski area[.]" (*Id.* at 14–15.)

On October 1, 2026, upon request from Defendant, this Court granted leave to file a motion for reconsideration of the Order. (ECF No. 105.) On October 9, 2026, Defendant filed its Motion for Reconsideration of this Court's Order. (ECF No. 108.) Defendant now requests the Court vacate its Order and enter summary judgment in favor of Defendant and dismiss the Complaint with prejudice in light of a subsequent decision from the Superior Court of New Jersey, Appellate Division. (ECF No. 108-1 at 17.) Defendant alternatively requests leave to file a renewed summary judgment motion, or for this Court to certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (*Id.*) On October 16, 2026, Plaintiffs filed their Opposition. (ECF No. 112.)

## II. Legal Standard

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i) if there are "matters or controlling decisions which counsel believes the Judge . . . has overlooked." L. Civ. R. 7.1(i); *Dunn v. Reed Grp., Inc.*, Civ. A. No. 08-1632, 2010 WL 174861, at *1 (D.N.J. Jan. 13, 2010). The comments to that Rule make clear, however, that "reconsideration is an extraordinary remedy that is to be granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, Civ. A. No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003)). In that regard, the Third Circuit has held the scope of a motion for reconsideration is "extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. Accordingly, an order or judgment may only be altered or amended if the party seeking reconsideration shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014); *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

A motion for reconsideration may be granted when an intervening change in the law plainly affects the original judgment entered by the Court. *Troncone v. Velahos*, Civ. A. No. 10-2961, 2012 WL 3018061, at *2 (D.N.J. July 23, 2012). Upon reconsideration, the Court may determine the extent to which the newly-issued decision from a court of controlling authority governs the issue,

and whether the Court's prior ruling should be affirmed, vacated, or modified. *Pittston Co. v. Sedgwick James of New York, Inc.*, 971 F. Supp. 915, 919 (D.N.J. 1997).

Although the Court's original judgment may be affirmed, the motion for reconsideration will still be granted where new law has not been considered. *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987). Decisions in cases not binding on the Court are not considered an intervening change in the controlling law. *D&D Assocs. v. Bd. of Educ. of N. Plainfield*, Civ. A. No. 03-1026, 2009 WL 904054, at *2 (D.N.J. Mar. 31, 2009). Likewise, entries of binding precedent that clarify but do not alter the existing law do not constitute an intervening change. *Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546 (D.N.J. 2009).

A court commits clear error of law "only if the record cannot support the findings that led to that ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. A. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603–04 (3d Cir. 2008)). "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.*

## III. Decision

### A. *McGuinniss* Does Not Warrant Reconsideration of This Court's Opinion and Order

#### 1. *McGuinniss* Does Not Constitute Controlling Law

Defendant's Motion seeks to vacate the Court's Order denying it summary judgment. Here, Defendant seeks reconsideration on the grounds that the New Jersey Superior Court Appellate Division's decision in *McGuinniss v. Ski Campgaw Mgmt. LLC*, 357 A.3d 933 (N.J. Super. Ct. App. Div. 2026), caused an intervening change in the controlling law. (ECF No. 86 at 4–9.) In opposition, Plaintiffs argue nothing in *McGuinniss* compels revisiting the Court's Order. (ECF No. 112 at 4–6.)

For there to be a change in controlling law, the decision must have been "issued by a court whose decisions must be followed and because the facts make the earlier decision indistinguishable from the case now to be decided." *Marshack v. Comm'r of Soc. Sec.*, Civ. A. No. 19-12840, 2021 WL 5923264, at *2 (D.N.J. Dec. 15, 2021) (quoting Controlling Law, Black's Law Dictionary (11th ed. 2019)); *see NVR, Inc. v. Majestic Hills, LLC*, Civ. A. No. 18-1335, 2023 WL 3726895, at *2 (W.D. Pa. May 30, 2023) ("An 'intervening change in controlling law' generally arises when a precedential opinion by a higher court or a statute passed by the legislature alters the law.").

In general, New Jersey State Appellate Division opinions like *McGuinniss* are not binding on this Court. *See In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014) ("State appellate decisions, however, are not controlling: 'while we may not ignore the decision of an intermediate appellate court, we are free to reach a contrary result if, by analyzing other persuasive data, we predict that the State Supreme Court would hold otherwise.'") (quoting *Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990)); *Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 266 (D.N.J. 2024) (holding "lower state court decisions can be a solid data point from which to predict how the highest state court will eventually rule"); *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 59 F. Supp. 2d 408, 414 (D.N.J. 1999) (explaining although at least two New Jersey Appellate Division opinions have discussed the legal concept in question, "while instructive, [the Court is] not bound by Appellate Division cases in interpreting state law"). Typically, this Court is bound only by New Jersey Supreme Court rulings because they are the "authoritative source" issuing "controlling decision[s]." *See Navigators Specialty Ins. Co.*, 739 F. Supp. 3d at 265 (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022)).

*McGuinniss* is a decision rendered by the New Jersey Superior Court Appellate Division and, for that reason alone, is not considered an intervening change in the law. *D&D Assocs.*, 2009 WL 904054, at *2 (D.N.J. Mar. 31, 2009); *see also Pharm. Sales & Consulting Corp.*, 59 F. Supp. 2d at 414. The New Jersey Supreme Court has already spoken on the issue of what claims can survive under the Ski Act in *Brett v. Great Am. Recreation, Inc.,* 677 A.2d 705 (N.J. 1996), and *McGuinniss* does not purport to overrule it or call into question any of its holdings. Moreover, *McGuinniss*, for reasons that will be discussed, is not a case whose facts are "indistinguishable from the case now to be decided." *Marshack*, 2021 WL 5923264, at *2 (citation omitted).

**2. *McGuinniss* Does Not Bar Plaintiffs' Complaint[1]**

*McGuinniss* addressed the narrow and novel question of whether the New Jersey Legislature intended for the Ski Act to apply to snow tubing. 357 A.3d at 937. Defendant claims *McGuinniss* extinguished Plaintiffs' theories of negligent course design and management as viable causes of action because a line in the opinion reads, "[o]nly where a skier can demonstrate violation of one of the operator's narrowly-defined statutory duties may a suit proceed." *Id.* at 941. However, this was the law prior to the Court's January 29, 2026 Opinion and Order. The Court found Plaintiffs' negligence theories survived because they were based on Defendant's alleged failure to "[r]emove as soon as practicable obvious, man-made hazards" in the form of sagging or downed

[1]The Court proceeds to analyze whether *McGuinniss* undermines its earlier Order because "[a]lthough state intermediate appellate decisions are not automatically controlling where the highest court of the state has not spoken," the Court still "must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law." *Robinson v. Jiffy Exec. Limousine Co*., 4 F.3d 237, 242 (3d Cir. 1993); *see also Navigators Specialty Ins. Co.*, 739 F. Supp. 3d at 266 (explaining "lower state court decisions can be a solid data point from which to predict how the highest state court will eventually rule").

fencing.[2] (ECF No. 85 at 11 (quoting N.J. Stat. Ann. § 5:13-3(a)).) Based on this statutory violation, a "suit [may] proceed." *McGuinniss*, 357 A.3d at 941.

Nothing in *McGuinniss* suggests the Ski Act supplants common law theories of negligent design and maintenance, so long as they are also based on a "violation of one of the operator's narrowly-defined statutory duties."[3] *McGuinniss* itself relies heavily on the New Jersey Supreme Court's opinion in *Brett*, which holds "design issues should be subjected to the same analysis as other risks. Thus, where a hazard resulting from a design flaw may be removed or eliminated, it is not inherent and, if obvious, the operator has a duty to remove it." 677 A.2d at 716. *Brett* is not new authority, and the Court applied it specifically to whether juries should hear the question of negligent course design:

> In *Brett v. Great Am. Recreation, Inc.*, the Supreme Court of New Jersey held the jury should consider questions of negligent course design, such as whether "it was appropriate to locate the parking lot" so close to the bottom of the trail the plaintiffs were on, or whether "a ski-lift tower placed where skiers might be expected to crash into it is a non-inherent, man-made risk if it could have been placed in a safer location."

(ECF No. 85 at 15 (quoting *Brett*, 677 A.2d at 716–19).)

The Ski Act only "displaces the common law *when applicable*." *McGuinniss*, 357 A.3d at 949 (emphasis added). Contrary to Defendant's position, *McGuinniss* supports a design theory of negligence under the Ski Act. The court held the statutory duty to remove "obvious, man-made

[2] The Court recognized the liability limitations imposed by the Ski Act when it explained "[s]o long as 'ski area operators,' like [Defendant], fulfill their responsibilities under the statute, 'there can be no recovery[.]'" (ECF No. 85 at 10 (quoting N.J. Stat. Ann. § 5:13-3(d)).)

[3] The court in *McGuinniss* dismissed counts one, two, and five of the complaint. 357 A.3d at 945. The third claim was the only one wherein plaintiff alleged violations of the Ski Act. *Id*. at 939. In contrast, Plaintiffs here are not lodging a "freestanding common law claim for negligent design" untethered to the Ski Act. (ECF No. 108-1 at 10.)

hazards" includes "[t]he placement of ski-lift towers . . . and the layout of the trails" because they "are man-made contributions to the skiing environment." 357 A.3d at 942 (quoting *Brett*, 677 A.2d at 705).

Defendant also argues its Motion should prevail because the expert's opinion relies on common law negligence and industry standards.[4] (ECF No. 108-1 at 10.) Plaintiffs respond their expert analyzed "whether the risks created by the placement of the Progression area were inherent risks of skiing" (ECF No. 112 at 8–10), which is the appropriate inquiry under the Ski Act.

An expert's use of industry safety standards to inform his understanding of what the Ski Act requires does not convert the statutory cause of action in the Complaint into a common law one. Plaintiffs offered several surveys on the safety protocols of ski resorts authored by their expert, as well as his personal observation of the practices at more than 300 ski areas in the U.S. and Defendant's own maintenance standard, as evidence of ski design standards. (ECF No. 83 at 15.) The expert linked this evidentiary foundation to Defendant's statutory duty to "[r]emove as soon as practicable obvious, man-made hazards," N.J. Stat. Ann. § 5:13-3(a)(3), and to whether those hazards are actually "man-made facilities . . . necessary for the ordinary operation of the ski area[.]" N.J. Stat. Ann. § 5:13-3(b)(3). The expert's report also examines whether the blue fencing on Defendant's ski resort constituted an "obvious, man-made hazard" by reference to studies on skiers' reaction times and evaluates what kind of risks are "inherent" to recreational skiing, as opposed to the risks posed by "man-made hazards." (ECF No. 112-3 ¶¶ 13–14, 17.) This analysis

[4] Ironically, Defendant faulted Plaintiffs' expert for failing to cite to "an actually-existing industry standard" (ECF No. 83 at 14–15) for the assertion ski resorts should have "learning areas . . . separated geographically from the other trails[.]" (*Id.*) At the same time, Defendant defended the precautions taken at its location by arguing "the use of blue fencing is within the standards of North American ski resorts." (*Id.* at 3.)

conforms to the purpose of the Ski Act, which is to determine and limit an operator's liability for the inherent risks of skiing. *McGuinniss*, 357 A.3d at 944; *Brett*, 677 A.2d at 715 ("[B]y restricting the duty of operators to man-made hazards, the Legislature has in large part simply restated the proposition that operators have no duty with regard to inherent risks of skiing.").

### 3. Constructive[5] Notice Under N.J. Stat. Ann. § 5:13-3(d)

Defendant requests the Court reconsider its Order and find Defendant did not have actual or constructive notice based on a similar holding in *McGuinniss*. (*See* ECF No. 108-1 at 12.) Defendant posits the record here is "materially indistinguishable" from the facts in *McGuinniss* because in that case, the court held "forty-five prior tubing incidents . . . did not establish notice because there was no evidence tying them to the specific condition, bunching[.]" (*Id.* (citing 357 A.3d at 946).) Plaintiffs respond that, unlike in *McGuinniss*, there is evidence linking the alleged cause of Mr. Perciballi's accident (a downed blue fence separating the Progression area) to the fence's propensity to sag. (ECF No. 112 at 10.)

The Court agrees with Plaintiffs—the record contains sufficient facts from which a reasonable jury could find constructive notice. To prove constructive notice, the plaintiff in *McGuinniss* cited to prior "incidents in which snow tubers either flipped over or were thrown off their tubes after running into deceleration mats." 357 A.3d at 946. The plaintiff failed to provide a nexus between the conditions causing his accident (the bunching) and those prior incidents. *Id.* Therefore, the defendant's employees in that case could not have been said to have constructive

---

[5] The Court in its Opinion ruled out the possibility of there having been actual notice. (*See* ECF No. 85 at 11; 12 n.2.) The Court held "[a] reasonable jury could find from Plaintiffs' evidence Mountain Creek had notice of an obvious hazard where it allegedly allowed a low-visibility fence to persistently sag directly in front of the progression area where its employees had a clear view and access to the danger at all time[s.]" (ECF No. 85 at 14.)

notice of the man-made hazard. Here, a photograph of the fencing taken an hour and a half after the accident depicted the fence sagging, and there was deposition testimony about how ski school employees respond to sagging and downed fencing. (ECF No. 85 at 11–13.) This evidence would permit a reasonable jury to find: (1) the fence was sagging at the time Mr. Perciballi began his run, and (2) Mr. Perciballi struck "a portion of downed blue fencing."[6, 7] (ECF No. 77-12 ¶ 5.)

Lastly, Defendant argues *McGuinniss* precludes the employees' observations from supplying the requisite notice evidence. (ECF No. 108-1 at 14.) In *McGuinniss*, the employees were positioned on the top and bottom of the hill and communicated with each other on radios in real time to make sure the run was clear before sending the next snow tuber. 357 A.3d at 946. If there were hazards on the lanes, the defendant's employees were to "shut down the lanes and make the repairs." *Id.*

These facts are distinguishable from those present here. While members of Defendant's ski patrol are charged with inspecting the courses and diligently fixing hazards throughout the day (Defendant's Ex. G, Deposition of Paul Bruno (ECF No. 77-8) at 21:2–25), the extent to which the fencing needed to have deteriorated in order to get fixed is in dispute. (*See* ECF No. 85 at 12–13). The director of the ski school testified as long as the center of the fence was off the ground, some

---

[6] Defendant claims the evidence does not establish a portion of the blue fencing was down, only that it was sagging and nothing "show[s] that a sagging fence has a propensity to fall[.]" (ECF No. 108-1 at 13.) But the Court believes it is justifiable and reasonable to infer sagging fences do indeed have a propensity to fall. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

[7] Defendant also claims the condition of the sagging fence itself cannot be the direct cause of Mr. Perciballi's collision because Plaintiffs fail to allege such facts. (*See* ECF No. 108-1 at 13 ("Plaintiffs do not allege that Mr. Perciballi struck a sagging fence. They allege that he struck a fence lying in the snow.").) But Plaintiffs allege "a portion of downed blue fencing" caused the accident, recognizing full well the same fence can be both sagging and partially downed simultaneously, and that a sagging fence makes it more likely a portion of it was about to fall, or had already fallen. (ECF No. 77-12 ¶ 5.)

sagging was "acceptable" and ski school employees were not trained to repair the fence until "the moment it hits the ground." (*Id.* at 13.) Moreover, there is nothing in the record to suggest Defendant's employees were monitoring the condition of the fence at the exact moment Mr. Perciballi made his run. *See Marshack*, 2021 WL 5923264, at *2 (explaining for there to be a change in controlling law, the decision must have been "issued by a court whose decisions must be followed and because the facts make the earlier decision indistinguishable from the case now to be decided" (citation omitted)).

**4. N.J. Stat. Ann. § 5:13-3(b)(3)'s Grant of Immunity**

N.J. Stat. Ann. § 5:13-3(b)(3)'s grant of immunity provides that no operator shall be responsible to any skier because of a failure to comply with N.J. Stat. Ann. § 5:13-3(a) if the failure was caused by "the location of man-made facilities and equipment necessary for the ordinary operation of the ski area" subject to its duty under N.J. Stat. Ann. § 5:13-3(a)(3). Defendant argues it is entitled to immunity because *McGuinniss* addressed a similar situation where the necessary equipment—the deceleration mats in that case—had been altered "after installation by becoming bunched up." (ECF No. 108-1 at 15.)

Defendant is not entitled to the statutory grant of immunity for the same reasons described in the Court's Opinion. (ECF No. 85 at 14–15.) Defendant is correct in stating that, under *McGuinniss*, a post-installation change leads back to the notice requirements of N.J. Stat. Ann. § 5:13-3(d), but for the reasons discussed *supra*, section III.A.3, a genuine dispute of material fact exists as to whether Defendant had constructive notice of the sagging fence. Furthermore, other equally persuasive New Jersey state cases address similar situations where facilities and equipment necessary for ordinary operation of the ski area can become man-made hazards. *See Neustadter v. Mountain Creek Resort, Inc.*, Civ. A. No. L–670–03, 2008 WL 398807, at *4 (N.J. Super. Ct. App.

Div. Feb. 15, 2008) (explaining there may have been a finding of liability if "something [would have] happened to [the fence] after [its] installation which rendered [it] hazardous and not necessary for the ordinary operation of the facility"); *Brough v. Hidden Valley, Inc*., 711 A.2d 382, 388 (N.J. Super. Ct. App. Div. 1998) ("The mere location of man-made facilities and equipment necessary for the ordinary operation of a ski slope is not necessarily an inherent risk of the sport assumed by the skier, neither does it absolve the operator of its duty should such location be considered by a jury to be an obvious man-made hazard."). The very text of the statute itself confirms this understanding, which provides no ski operator "shall be responsible to any skier or other person because of its failure to comply with any provisions of subsection 3.a. if such failure was caused by: *Subject to the provisions of subsection 3.a.(3)*, the location of man-made facilities and equipment necessary for the ordinary operation of the ski area . . . ." N.J. Stat. Ann. § 5:13-3(b)(3) (emphasis added).

Finally, as the Court previously held, Plaintiffs' course-placement theory survives for the reasons described *supra*, section III.A.2. Nothing in *McGuinniss* compels the Court to alter its holding. Indeed, the court in *McGuinniss* did not attempt to wade into the "thin distinction . . . embraced by New Jersey courts" concerning the placement of ski courses versus the placement of "man-made facilities and equipment necessary for the ordinary operation of the ski area." (ECF No. 85 at 15.) Motions for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone*, 664 F.3d at 415.

**B. Interlocutory Appeal Under 28 U.S.C. § 1292(b)**

In the alternative, Defendant requests the Court certify the Order for interlocutory appeal. (ECF No. 108-1 at 16.) The statute governing interlocutory appeals, 28 U.S.C. § 1292(b), provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such an order[.]

Therefore, a district court may certify a non-final order for interlocutory appeal where the order: (1) involves a controlling question of law, (2) there is a "substantial ground for difference of opinion" about that question of law, and (3) where immediate appeal may materially advance the ultimate termination of the litigation. *See Katz v. Carte Blanche Corp*., 496 F.2d 747, 754 (3d Cir. 1974). "The burden is on the movant to demonstrate that all three requirements are met." *F.T.C. v. Wyndham Worldwide Cor*p., 10 F. Supp. 3d 602, 633 (D.N.J. 2014) (citations omitted), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

However, a district court should certify an interlocutory appeal pursuant to 28 U.S.C. § 1292 "sparingly" and "only in exceptional circumstances that justify a departure from the basic policy of postponing review until the entry of the final order." *See Fiscus v. Combus Fin. AG*, No. 03-1329, 2006 WL 2845736, at *1 (D.N.J. Sept. 28, 2006) (citing *Hulmes v. Honda Motor Co*., 936 F. Supp. 195, 208 (D.N.J. 1996)). Even if the moving party meets all criteria under Section 1292(b), the district court may still deny certification, because "permission to appeal is wholly within the discretion of the courts." *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976); *see also United States v. Riddick*, 669 F. App'x 613, 613 n.2 (3d Cir. 2016) (citing *Forsyth v. Kleindienst*,

599 F.2d 1203, 1208 (3d Cir. 1979)) (finding an order denying a request to certify questions for appeal was unreviewable).

**1. Controlling Question of Law**

"A question is 'controlling' if its incorrect disposition would require reversal of the final judgment." *Kapossy v. McGraw-Hill, Inc*., 942 F. Supp. 996, 1001 (D.N.J. 1996) (quoting *Katz*, 496 F.2d at 755). "When determining whether an issue presents a controlling question of law, the emphasis is on whether a different resolution of the issue would eliminate the need for trial." *Alexander v. Wash. Mut., Inc*., Civ. A. No. 07-4426, 2008 WL 3285845, at *3 (E.D. Pa. Aug. 4, 2008). Defendant presently seeks to appeal the Court's determination the Ski Act permits a theory of negligent course design and maintenance, and its determination Plaintiffs' constructive notice evidence creates a genuine issue of material fact. (*See* ECF No. 85.) Judgment would be reversible on final appeal if this determination is erroneous, and a different determination of the issue would eliminate the need for trial. Therefore, this is a controlling question of law.

**2. Substantial Ground for Difference of Opinion**

Substantial ground for a difference of opinion "must arise out of genuine doubt as to the correct legal standard." *Hulmes*, 936 F. Supp. at 207. "A party's disagreement with the district court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b)." *Id*. "The clearest evidence of 'substantial grounds for difference of opinion' is where 'there are conflicting interpretations from numerous courts.'" *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (citing *Beazer E., Inc. v. The Mead Corp*., Civ. A. No. 91-0408, 2006 WL 2927627, *2 (W.D. Pa. Oct. 12, 2006)).

Defendant fails to establish a substantial ground for difference of opinion in its Motion. As explained, *McGuinness* does not belie the holdings of the New Jersey Supreme Court's decision in

*Brett*. Nor does it conflict with the opinions of the New Jersey Superior Court Appellate Division in *Neustadter* or *Brough*. Most importantly, *McGuinniss*, as a decision of New Jersey's intermediate appellate court, does not create "genuine doubt as to the correct legal standard" enunciated by the New Jersey Supreme Court in *Brett*. *Hulmes*, 936 F. Supp. at 207.

**3. Materially Advance the Ultimate Termination of the Litigation**

An interlocutory appeal materially advances the litigation's ultimate termination if it will: (1) eliminate the need for trial; (2) eliminate complex issues from the action, or; (3) eliminate issues that make discovery more difficult and more expensive. *In re Dwek*, Civ. A. No. 10-4259, 2011 WL 487582, at *4 (D.N.J. Feb. 4, 2011) (citing *L.R. v. Manheim Twp. Sch. Dist*., 540 F. Supp. 2d 603, 613 (E.D. Pa. Mar. 26, 2008)). A critical factor is whether the interlocutory appeal will cause excessive delay. *See Hulmes*, 936 F. Supp. at 212 (noting "[d]elay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial" (quotation and citation omitted)). Furthermore, "[w]here discovery has been ongoing and the case is nearly ready for trial, 'an interlocutory appeal can hardly advance the ultimate termination of the litigation.'" *Knopick*, 963 F. Supp. 2d at 398 (citing *Bradburn Parent Teacher Store v. Minn. Mining & Mf*g. Co., Civ. A. No. 02-7676, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005)).

Defendant contends this appeal would materially advance the ultimate termination of the litigation. (ECF No. 108-1 at 16.) If the Third Circuit were to find the Plaintiffs' claims are not viable, termination of litigation would be imminent. However, at this stage of litigation, the appeal process will likely not materially advance the termination of litigation. Discovery is closed, pre-trial motions have been adjudicated, and this action is approaching trial.[8] Courts in this Circuit

[8] Fact discovery ended September 11, 2024 (Am. Pretrial Scheduling Order (ECF No. 51)), and expert discovery concluded March 12, 2025 (Letter from Edward J. Turro, Esq. (ECF No. 63)). A Final Pretrial Conference was held on September 16, 2026. (ECF No. 102.)

have recognized an interlocutory appeal at this stage would likely not materially advance the ultimate termination of litigation. *See Knopick*, 963 F. Supp. 2d at 398; *see also Hulmes*, 936 F. Supp. at 212.

Defendant has not carried its burden of demonstrating all three requirements for immediate interlocutory appeal are met in its Motion. Even if it had met this burden, the Court would still retain discretion to deny Defendant's request, which it finds good cause to do. *Bachowski*, 545 F.2d at 368 ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present." (citation omitted)). Defendant's request for certification is nothing more than a third bite at the apple to dismiss Plaintiffs' claims on the merits. Accordingly, Defendant's request that this Court certify its Order for immediate interlocutory appeal is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the Motion (ECF No. 108) is **DENIED** in its entirety.[9] An appropriate order follows.

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: November 10, 2026

---

[9] In addition to denying the Motion, the Court denies Defendant's alternative request for leave to file a renewed summary judgment motion. (ECF No. 108-1 at 17.)